**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN J. VISALLI,<br><br>Plaintiff,<br><br>v.<br><br>INTERNAL REVENUE SERVICE and UNITED STATES DEPARTMENT OF TREASURY<br><br>Defendants. | ) | Case No. _______________<br><br>**JURY DEMAND** |

**COMPLAINT**

Plaintiff Brian J. Visalli (Visalli), by and through the undersigned attorneys, for his Complaint against the Internal Revenue Service and the United States Department of the Treasury, alleges and states as follows:

**PRELIMINARY STATEMENT**

1. This case concerns the willful and unauthorized disclosure of a federal law enforcement officer's protected personnel, disciplinary and tax information by IRS officials to the Department of Justice. The disclosures were made in an effort to discredit one of the agency's own decorated special agents. The effect was to brand him a liar in the eyes of the federal prosecutors with whom he works.

2. Plaintiff Brian J. Visalli is a 24-year Special Agent with IRS Criminal Investigation (IRS-CI). He has received a performance award in each of the last 22 years. He is the lead case agent on multiple significant investigations of abusive tax schemes involving sophisticated, high-dollar structures marketed to high-net-worth individuals and corporate taxpayers.

3. Since 2012, Visalli has repeatedly reported to the Treasury Inspector General for Tax Administration (TIGTA), to IRS-CI leadership, and to other authorized recipients that management of IRS-CI's Chicago Field Office (CHIFO) has refused to investigate the material advisors who design and sell those schemes, notwithstanding the evidence and the recommendations of the agency's own subject-matter experts. His reports contributed to two published TIGTA audit reports on this and related topics.

4. The efforts made to retaliate against Visalli for his actions went far beyond bad performance reviews or other disciplinary action. The Internal Revenue Service trains its criminal investigators on the laws governing the privacy of tax information as a core element of their job, and the Department of Justice prosecutes people who break it. The unauthorized disclosure of a federal law enforcement officer's protected personnel and disciplinary information by his own agency to unauthorized individuals, which disclosure necessarily conveyed tax return information in violation of 26 U.S.C. § 6103, amounts to felony misconduct. See 26 U.S.C. § 7213; *United States v. Littlejohn*, 181 F.4th 1247 (D.C. Cir. 2026) (approving five-year prison term for defendant who leaked taxpayer information).

5. In October 2024, Visalli learned from an Assistant United States Attorney that personnel within the Department of Justice Tax Division (DOJ-Tax) were describing him as "impaired" under *Giglio v. United States*, 405 U.S. 150 (1972), and that there was "a pending action" against him. For a federal criminal investigator, a *Giglio* label is a scarlet letter. It follows the agent from case to case and prosecutor to prosecutor, and it ends careers. The characterization DOJ-Tax personnel were conveying, that Visalli was a witness whose credibility was so compromised that it had to be disclosed to criminal defendants, could only have originated with

unauthorized disclosures by IRS officials concerning an investigation into a financial disclosure previously made by Visalli.

6. There was one problem: no *Giglio* determination existed. No prosecutorial authority had made one. No United States Attorney's Office had issued a *Giglio* letter. No disciplinary action had even been proposed. What existed in October 2024 was merely an uninvestigated, unproven allegation made by Visalli's second-level supervisor, whom Plaintiff had previously reported for mismanagement. As discussed in this Complaint, IRS-CI itself has repeatedly characterized the issue which gave rise to this allegation as minor and unintentional.

7. The only way DOJ-Tax personnel could have learned of that pending allegation is that someone inside IRS-CI disclosed it to them. The disclosure of this pending allegation necessarily conveyed Visalli's protected personnel and disciplinary information, and inherently conveyed return information protected by 26 U.S.C. § 6103, including Visalli's marital status, joint filing status, and the existence of an ETCO referral concerning his joint tax return. Since IRS-CI special agents handle protected return information as a core function of their duties and are trained on the confidentiality requirements of § 6103 and the criminal penalties for unauthorized disclosure under 26 U.S.C. § 7213, the officials who made these disclosures were aware that they were violating those statutes.

8. The abusive nature of the disclosures is further confirmed by the Agency's current attempt to use them as a basis to justify Visalli's removal from federal service, notwithstanding that IRS-CI proposing officials characterized the underlying conduct as a minor, strict liability violation, and notwithstanding that the same official who now proposes to remove Visalli issued a Fact Finding Memorandum less than five weeks earlier that concluded that Visalli's actions were not willful and that he had acted proactively on later tax returns.

9. The cost to Visalli has been concrete. The disclosures have interfered with Visalli's active investigations, damaged his professional standing within both IRS-CI and the prosecutorial community handling those investigations, and resulted in actual damages to Plaintiff. Visalli accordingly seeks actual damages, statutory damages, punitive damages, attorney fees and costs, and such other relief as the Court deems appropriate under 5 U.S.C. § 552a(g) and 26 U.S.C. § 7431.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 5 U.S.C. § 552a(g)(1)(D) and 26 U.S.C. § 7431(a)(1).

11. Venue is proper in this District under 5 U.S.C. § 552a(g)(5), 26 U.S.C. § 7431(a)(1) and 28 U.S.C. § 1391(e)(1) because Plaintiff resides in the Northern District of Illinois and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

12. Since 2002, Plaintiff Brian J. Visalli has been employed as a Special Agent with the IRS-CI. Plaintiff resides in the Northern District of Illinois.

13. Defendant Internal Revenue Service (IRS) is an agency of the Department of the Treasury and is an agency of the United States within the meaning of 5 U.S.C. § 552a(a)(1). The IRS maintains records regarding Visalli within systems of records covered by the Privacy Act, including personnel records, disciplinary records, records maintained by the IRS-CI Disciplinary Board, records maintained by the IRS Office of Professional Responsibility, and records containing Visalli's tax return information governed by 26 U.S.C. § 6103. One or more IRS employees are responsible for the unlawful actions taken against Visalli.

14. Defendant United States Department of the Treasury (Treasury) is an agency of the United States as defined by 5 U.S.C. §§ 552a(a), (e), and subject to the jurisdiction of this Court. Treasury is an executive department of the United States government responsible for the actions of its component Defendant IRS.

## FACTUAL ALLEGATIONS

### A. Plaintiff's Role at IRS-CI

15. Visalli began his career with IRS-CI in 2002 and has served in various capacities of increasing responsibility.

16. Throughout his career, Visalli has specialized in the investigation of significant abusive tax schemes involving high-value taxpayers, sophisticated tax planning structures, and cross-border tax avoidance arrangements. During the events relevant to this Complaint, Visalli was the lead case agent on multiple significant abusive tax scheme investigations. Visalli has received performance awards for 22 consecutive years.

17. Beginning in 2012 and continuing through the present, Visalli has made multiple reports concerning what he reasonably believed to be gross mismanagement by IRS-CI officials of significant abusive tax scheme investigations. The gross mismanagement Visalli has consistently reported includes the CHIFO management's persistent refusal throughout Visalli's career to pursue investigations of material advisors promoting abusive tax schemes to large individual high-net-worth taxpayers and corporate taxpayers, notwithstanding the evidentiary basis for such investigations and the recommendations of subject-matter experts. These reports were made to the TIGTA, IRS-CI leadership, and other authorized recipients. Visalli's reports were made in good faith based on his reasonable belief, developed through his 24 years of investigative

experience, that the conduct disclosed constituted gross mismanagement within the meaning of 5 U.S.C. § 2302(b)(8).

18. The CHIFO management officials responsible for the institutional pattern of mismanagement Visalli reported, and whose conduct is likely relevant to the retaliatory pattern against Visalli described in this Complaint, include, but are not limited to, the following officials during the relevant period: (a) Justin Campbell (Campbell), Special Agent in Charge of CHIFO from June 2021 through May 2024, subsequently Director of Strategy, overseeing the IRS-CI Disciplinary Board; (b) Marta Grijalva (Grijalva), Assistant Special Agent in Charge of CHIFO from October 2022 through the present, with branch authority that included Visalli's group; (c) Ramsey Covington (Covington), Special Agent in Charge of CHIFO from approximately May 2024; and (d) Nick Zagotta (Zagotta), Supervisory Special Agent within CHIFO and Visalli's direct supervisor during the relevant period, until his transition to a Director of Field Operations analyst position in June 2026.

19. Visalli's reports directly contributed to two published TIGTA audit reports: Report 2023-40-047 (issued August 24, 2023) addressing revolving door and conflict of interest issues within IRS enforcement, and Report 2024-400-045 (issued August 26, 2024) addressing IRS failure to address multinational tax avoidance.

## B. THE 2023 ETCO LETTER AND PLAINTIFF'S RESPONSE

20. On or about August 29, 2023, Visalli received a letter from the IRS Employee Tax Compliance Office (ETCO) stating that records indicated he 'did not pay his tax liability in full by the return due date' for tax period 202112 (*viz*, the 2021 calendar year). The letter provided no substantive detail regarding the alleged noncompliance, no calculation of the amount at issue, and no explanation of the discrepancy.

21. In or about September 2023, Visalli submitted a written response to ETCO. Visalli had not himself identified any issues with the TY2021 return, and ETCO's August 29, 2023 letter did not identify any specific issue for Visalli to address. In his response, Visalli explained the household tax filing circumstances and committed prospectively to inquire further and if necessary 'either start to file separately or assume control of the preparation of the returns.'

22. On July 13, 2024, ETCO issued a follow-up letter using discretionary permissive language, stating that the tax matter 'could be considered more than a minor or technical error,' and referring the matter to 'local management.' The letter identified the framework for handling the matter as the 'May 15, 2002, Employee Tax Compliance (ETC) / National Treasury Employees Union (NTEU) letter of understanding.' The July 13, 2024 letter provided no additional detail regarding what specific issues ETCO was raising with the TY2021 return.

23. In approximately the same time period, Grijalva, against whom Plaintiff had previously made reports about mismanagement, made a discretionary escalation to the IRS-CI Disciplinary Board, submitting allegations of Lack of Candor against Visalli based on his financial filings and tax matters. The July 2024 disciplinary referral was unsubstantiated and based on a documented misapprehension of facts. Grijalva presented the allegations to the Disciplinary Board without prior notice to Visalli and without any independent investigation. Grijalva further chose the most severe disciplinary pathway available and escalated the matter to the Disciplinary Board rather than pursuing any of several less severe alternatives available under IRS-CI procedures.

24. On August 20, 2024 at 2:58 PM, with less than 24 hours advance notice, Zagotta informed Visalli that Grijalva wanted to meet with him the following morning, providing no substantive description of the meeting's purpose beyond characterizing the matter as a 'tax compliance thing' and stating 'that's all I was told.' On August 21, 2024, Zagotta and Grijalva

conducted an interview of Visalli at the Downers Grove Post of Duty. The supervisors did not disclose the Disciplinary Board involvement until the end of the interview and never mentioned Lack of Candor allegations but Grijalva stated that 'numerous other ASACs from multiple field offices are also dealing with employee tax compliance issues currently.' Grijalva's own characterization established that tax compliance matters were routine within IRS-CI, a position inconsistent with the Lack of Candor framework she had already presented to the Disciplinary Board. In the hours and days immediately following the interview, Visalli provided extensive good-faith disclosures and evidence to Grijalva, including a detailed tax reconstruction, CPA emails, and an August 26, 2024 formal letter from his CPA, all confirming Visalli did nothing wrong relating to his taxes.

25. After the referral by Grijalva, the matter sat with the IRS-CI Disciplinary Board without any independent investigation being performed. By October 2024, no disciplinary action had been proposed against Visalli.

26. On September 10, 2024, after Visalli learned of the Disciplinary Board involvement and of Grijalva's tactical conduct in escalating unsubstantiated allegations against him, Visalli filed a whistleblower retaliation complaint alleging prohibited personnel practices with the United States Office of Special Counsel (OSC).

### C. VISALLI'S DISCOVERY THAT PROTECTED INFORMATION HAD BEEN DISCLOSED TO ANOTHER AGENCY

27. In his role with IRS-CI, Visalli works closely with assistant US attorneys around the country. The assistant US attorneys are employed by the United States Department of Justice.

28. On October 4, 2024, Plaintiff had a conversation with an Assistant United States Attorney (AUSA) concerning ongoing investigations in which they were involved. During the discussion, the AUSA informed Visalli of a conversation he had recently had with another AUSA

within his district, who had just transferred from the Department of Justice, Tax Division (DOJ-Tax).

29. The AUSA Plaintiff met indicated that his new counterpart had stated to him that DOJ-Tax personnel were characterizing Visalli as impaired under *Giglio v. United States*, 405 U.S. 150 (1972), and that there was 'a pending action' against Visalli. In conveying this characterization, DOJ-Tax personnel were representing that Visalli had engaged in conduct sufficiently severe as to impeach his credibility, requiring disclosure to criminal defense attorneys.

30. In October 2024, no formal *Giglio* determination had been made by any prosecutorial authority regarding Visalli, and no disciplinary action had been proposed against Visalli. The only mechanism by which DOJ-Tax personnel could have learned of the pending disciplinary allegations against Visalli and applied the *Giglio* characterization is if one or more IRS-CI officials disclosed protected personnel, disciplinary, and tax return information to DOJ-Tax personnel.

31. Visalli never gave IRS-CI officials authorization to disclose his personnel, tax or disciplinary records to any other agency.

32. The underlying disciplinary matter that formed the basis of the *Giglio* characterization communicated by DOJ-Tax personnel arose from and was inherently based on Visalli's protected tax return information. The pending action referenced by DOJ-Tax personnel originated with the July 13, 2024 ETCO referral concerning Visalli's TY2021 joint tax return with his wife. Inherent within this disciplinary allegation are three categories of protected return information about Visalli: (a) that Visalli is married; (b) that Visalli files a joint tax return with his wife; and (c) that Visalli's wife has assets and financial interests that are joint return information. See 26 U.S.C. § 6103(b)(2)(A).

33. IRS-CI Special Agents and IRS-CI officials receive substantial training on the requirements of 26 U.S.C. § 6103 as a core element of their professional responsibilities. As federal criminal investigators who handle protected tax return information in the course of their investigations, IRS-CI officials possess deep familiarity with the confidentiality requirements of § 6103 and the criminal penalties under § 7213 for unauthorized disclosure. Any unauthorized disclosure of Visalli's tax return information to DOJ-Tax personnel who did not have a legitimate tax administration need to know constituted willful violation of § 6103 by officials trained on and fully aware of the confidentiality requirements.

34. No U.S. Attorney's Office has ever made any *Giglio* determination concerning Visalli. No USAO *Giglio* letter has been issued.

**D. IRS-CI'S RESURRECTION OF THE *GIGLIO* ASSERTIONS**

35. On February 11, 2025, IRS-CI issued a proposed one-day suspension against Visalli based on the financial matters that had been the subject of Grijalva's July 2024 referral and earlier ETCO Letter.

36. The February 11, 2025 proposed suspension described Visalli's alleged financial violations as 'Failure to Observe Written Regulations,' a strict liability regulatory framework that does not require any showing of intent, deception, or dishonesty. Within the body of the proposed suspension, the proposing officer specifically stated 'I do not find that you intentionally failed to timely pay.' The February 11, 2025 proposed suspension made no reference to any *Giglio* impairment theory and did not characterize Visalli as *Giglio*-impaired.

37. In the following months, IRS-CI took further action demonstrating that it viewed Visalli's omissions as minor infractions, first offering through the auspices of OSC to reduce the suspension to a letter of reprimand and subsequently proposing a counseling letter.

38. On June 12, 2025, Visalli's counsel submitted a revised counseling letter that Visalli found acceptable, representing mutual acceptance of a counseling letter resolution. Despite this agreement regarding the framework of a resolution, for nearly half a year, IRS-CI neither proposed alternative language nor advised that it was halting negotiations.

39. On February 20, 2026, Thomas Demeo conducted a Management Inquiry Process interview with Visalli. During the interview, Visalli offered to provide additional information to supplement the record. Demeo stated that additional information was not necessary.

40. On March 3, 2026, Visalli met with a special agent of TIGTA and provided information about IRS-CI management's actions with respect to certain cases he was investigating as part of the TIGTA whistleblowing process. Zagotta was informed by Visalli of the TIGTA meeting before it took place. Zagotta also encountered the meeting when he stopped at the Starbucks where it was occurring and later discussed it with Visalli in his office.

41. On March 4, 2026, the Disciplinary Board convened to review Visalli's evidence file. On March 11, 2026, Acting Deputy Director Carissa Messick signed a Section 1203(b)(9) Fact Finding Memorandum finding that Visalli 'has not demonstrated any intent to violate his known legal duty, therefore, the employee is not willful.' The memorandum attributed Visalli's TY2021 tax filing conduct to 'oversight' and noted Visalli was 'proactive' on TY2022 and TY2023 matters.

42. Despite her own March 11, 2026 findings, on April 13, 2026, with no further material facts before her and no further investigation performed, Messick signed a proposed removal letter (NOPR) against Visalli. The proposed removal reclassified Visalli's conduct from 'Failure to Observe Written Regulations' (as charged in the February 11, 2025 proposed suspension) to 'Lack of Candor' (dishonesty). The proposed removal cited speculative *Giglio*

impairment as the sole justification for departing from the applicable Penalty Guide range of admonishment to five-day suspension for first-offense non-willful tax compliance issues.

43. Under applicable IRS guidelines, Messick's own no-willfulness finding, signed thirty-three days earlier on identical facts and an identical record, was doctrinally incompatible with the Lack of Candor charge. The only material development between the March 11, 2026 no-willfulness finding and the April 13, 2026 Lack of Candor charge was Visalli's continued protected whistleblowing activity concerning various investigations, including Visalli's direct pushback involving a specific investigation during the period from February 2024 through February 2026 that IRS-CI CHIFO management had improperly closed on two separate occasions.

## E. Damages Sustained By Plaintiff

44. Visalli has sustained actual damages as a result of the disclosure pattern, including but not limited to:

a. The withholding of Visalli's FY2025 performance award in November 2025, in the estimated amount of $6,000 to $7,000, ending Visalli's 22-year consecutive record of performance awards. The withholding was causally connected to the disclosure pattern;

b. Medical expenses and health-related pecuniary costs incurred beginning in October 2024, when Visalli was prescribed anti-depression medication contemporaneously with his discovery of the DOJ-Tax disclosure. Visalli has incurred prescription costs, medical appointment costs, and related pecuniary expenses in managing his medication regimen from October 2024 through the present, including the resumption of medication following its temporary discontinuation in early 2026 and its restart after the April 16, 2026 NOPR delivery.

c. Medical expenses incurred as a result of stress-related health effects, including a substantial fall and hospitalization on April 21, 2026, following the delivery of the NOPR on April 16, 2026, the most likely cause of which was identified as stress-induced exhaustion and sleep deprivation; and

d. Legal expenses incurred as a result of defending against discipline that is based on the non-existent *Giglio* determination referenced in the disclosures.

## COUNT I

***Violation of the Privacy Act, 5 U.S.C. § 552a(b) and (g)(1)(D)***

45. Plaintiff incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

46. The Privacy Act, 5 U.S.C. § 552a(b), prohibits an agency from disclosing any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless the disclosure falls within one of twelve enumerated statutory exceptions.

47. The IRS maintains records regarding Visalli within systems of records covered by the Privacy Act, including personnel records, disciplinary records, records maintained by the IRS-CI Disciplinary Board, and records maintained by the IRS Office of Professional Responsibility. These systems of records are the subject of published System of Records Notices.

48. The information disclosed by IRS-CI officials to DOJ-Tax personnel concerning Visalli, including information concerning the pending disciplinary allegations against him and adverse characterizations of his professional conduct and credibility, was information contained in records maintained by the IRS in a system of records within the meaning of 5 U.S.C. § 552a(a)(4) and (a)(5).

49. Neither Visalli nor any other authorized recipient provided written consent to the disclosure of this information to DOJ-Tax personnel.

50. No statutory exception under 5 U.S.C. § 552a(b) applies to the disclosures that IRS-CI officials made to DOJ-Tax personnel. In particular, the routine use exception under § 552a(b)(3) does not apply because the disclosures were not made for a purpose compatible with the purpose

for which the records were collected, and the written law enforcement request exception under § 552a(b)(7) does not apply because no written request from the head of the receiving agency is documented in the record.

51. The disclosures had an adverse effect upon Plaintiff within the meaning of 5 U.S.C. § 552a(g)(1)(D).

52. Given that (a) Visalli had engaged in sustained protected whistleblowing activities spanning over a decade prior to the disclosures, (b) the disclosures falsely represented that Plaintiff had been determined to be *Giglio*-impaired, and (c) IRS-CI officials are trained on the confidentiality of tax return information as part of their professional development, the disclosures were intentional or willful within the meaning of 5 U.S.C. § 552a(g)(4).

53. Visalli has sustained actual damages as a result of the disclosures, as set forth in paragraph 44 above, in an amount to be determined at trial but in no case less than the statutory minimum of $1,000 per willful violation under 5 U.S.C. § 552a(g)(4)(A). Visalli is entitled to recover the costs of this action and reasonable attorney fees under 5 U.S.C. § 552a(g)(4)(B).

## COUNT II

***Violation of the Internal Revenue Code, 26 U.S.C. § 6103 and § 7431***

54. Plaintiff incorporates by reference paragraphs 1 through 44 as if fully set forth herein.

55. 26 U.S.C. § 6103(a) provides: 'Returns and return information shall be confidential.' The statute prohibits disclosure by any officer or employee of the United States except as authorized by specific enumerated exceptions.

56. 26 U.S.C. § 6103(b)(2)(A) defines 'return information' broadly to include a taxpayer's identity, the nature, source, or amount of income, payments, receipts, deductions,

exemptions, credits, assets, liabilities, net worth, tax liability, and whether the taxpayer's return, return information, or taxpayer return information was, is being, or will be examined or subject to other investigation or processing.

57. The information disclosed by IRS-CI officials to DOJ-Tax personnel concerning Visalli included protected return information within the meaning of § 6103(b)(2)(A), including: (a) Visalli's marital status; (b) Visalli's joint filing status with his wife; (c) the existence of spousal financial interests reportable on the joint tax return; (d) the existence of the ETCO referral concerning Visalli's TY2021 joint return; and (e) additional tax filing details forming the basis of the disciplinary matter.

58. Neither Visalli nor any other authorized person consented to the disclosure of his return information to DOJ-Tax personnel outside the scope of any legitimate tax administration purpose.

59. No statutory exception under § 6103 applies to the disclosures. In particular, the tax administration disclosure provisions under § 6103(h) do not authorize disclosure of an IRS employee's own tax return information to prosecutorial authorities for purposes of undermining the employee's professional standing.

60. In disclosing this information to DOJ-Tax personnel, IRS-CI officials violated 26 U.S.C. § 6103.

61. The disclosures were willful within the meaning of 26 U.S.C. § 7431(c)(1)(B)(ii). IRS-CI Special Agents and officials receive substantial training on § 6103 as core professional responsibilities and possess deep familiarity with the criminal penalties for unauthorized disclosure under § 7213. The officials responsible for the disclosures acted with knowledge of the § 6103 requirements and in flagrant disregard of them, in circumstances in which Visalli had engaged in

whistleblowing activities and the disclosures falsely represented that Plaintiff had been determined to be *Giglio*-impaired.

62. Visalli has sustained actual damages as a result of the disclosures, as set forth in paragraph 44 above. Under 26 U.S.C. § 7431(c)(1)(A), Visalli is entitled to the greater of $1,000 for each act of unauthorized disclosure or the sum of actual damages sustained as a result of such unauthorized disclosure.

63. Under 26 U.S.C. § 7431(c)(1)(B)(ii), because the unauthorized disclosures were willful or the result of gross negligence, Visalli is entitled to punitive damages. Under 26 U.S.C. § 7431(c)(2) and (c)(3), Visalli is entitled to recover the costs of the action and reasonable attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brian J. Visalli respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff and against Defendants on Counts I and II;

B. Award Plaintiff actual damages sustained as a result of Defendants' violations of the Privacy Act, in an amount to be determined at trial but in no case less than the statutory minimum under 5 U.S.C. § 552a(g)(4)(A);

C. Award Plaintiff actual damages sustained as a result of Defendants' violations of 26 U.S.C. § 6103, or the statutory minimum of $1,000 per unauthorized disclosure under 26 U.S.C. § 7431(c)(1)(A), whichever is greater;

D. Award Plaintiff punitive damages under 26 U.S.C. § 7431(c)(1)(B)(ii) for the willful unauthorized disclosures;

E. Award Plaintiff the costs of this action and reasonable attorney fees under 5 U.S.C. § 552a(g)(4)(B) and 26 U.S.C. § 7431(c)(2) and (c)(3);

F. Award such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Federal Rule of Civil Procedure 38, subject to any limitations applicable to Privacy Act and Internal Revenue Code civil actions.

October 2, 2026

Respectfully Submitted,

By: /s/ *Seth D. Matus*
One of Plaintiff's Attorneys

Seth Matus
WORKPLACE LAW PARTNERS, P.C.
155 N. Michigan Avenue, Suite 719
Chicago, IL 60601
(312) 861-1800
smatus@fishlawfirm.com
docketing@fishlawfirm.com